UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BERKOWSKI,

              **Plaintiff,**                **CIVIL ACTION NO. 8-CV-12862**

     **vs.**                     **DISTRICT JUDGE PATRICK J. DUGGAN**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 17) be DENIED, that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED, and that the case be remanded for further proceedings as set forth herein.

                                      \*\*\*

**II.**    **PROCEDURAL BACKGROUND**

       Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of August 28, 2003, alleging that he had been disabled and unable to work since January 16, 2003 due to a back injury and possible liver problem.  (TR 81, 101-02).  The Social Security Administration denied Plaintiff's claim.  A requested *de novo* hearing was held on October 20, 2006[1] before Administrative Law Judge (ALJ) Kathryn D. Burgchardt who subsequently found that the claimant was not entitled to disability or Disability Insurance Benefits because he was not under a

---

[1] An April 4, 2006 hearing was adjourned to allow Plaintiff to secure representation.  (TR 874-88).  The June 28, 2006 hearing was continued at Plaintiff's counsel's request so he could submit further medical records.  (TR 889-930).  Plaintiff's counsel had submitted hundreds of pages of medical records the afternoon before the hearing.  (TR 933-34).

disability at any time from January 16, 2003 through the date of the ALJ's November 21, 2006 decision. (TR 29, 931). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5-7). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.      Plaintiff's Testimony and Reports

Plaintiff was forty-two years old at the time of the administrative hearings and has a high school education. (TR 897, 901). Plaintiff is married and has four children, including step children. (TR 904). Two of the children, ages eighteen and six, live with him. (TR 904). Plaintiff has past work experience as a truck driver and in auto repair and service write-ups. Plaintiff's last job was as a delivery and pick-up driver. (TR 117, 909). Plaintiff was injured on the job on January 16, 2003 and has not worked since that date. (TR 122, 897), Plaintiff testified that his back injury gives him the most problems. (TR 898). He underwent a micro lumbar decompression at L4 and L5 in 1989 or 1990. (TR 898). Plaintiff testified that as of the few months prior to the June 2006 hearing he no longer had health insurance. (TR 899).

Plaintiff testified that he also developed depression and takes Effexor for it. (TR 899, 946). Plaintiff testified that his memory and concentration have become worse and he has trouble completing tasks, for example, he cannot follow an entire television program. (TR 947). Plaintiff has trouble falling asleep and staying asleep. (TR 947). Plaintiff has had injuries to his right hand occurring as far back as childhood. (TR 901). Two fingers and the end of his thumb were severed in various accidents and reattached. (TR 901). Plaintiff testified that he has arthritis in his right

hand with stiffness.  (TR 943).  Plaintiff testified that he has no feeling at the tip of his thumb, he cannot grip things like he used to be able to and he drops things on a daily basis.  (TR 943-45). Plaintiff testified that he is also treated for irritable bowel syndrome with diverticulitis and he has to use the bathroom from four to six times per day, taking approximately five to ten minutes in the restroom.  (TR 947-48).  Plaintiff reported that his ankle was shattered in 1979 and now it swells at times and his ankle locks up once or twice a month resulting in falls.  (TR 948).  It also causes extreme pain and he reported that he walks with a limp.  (TR 948).

Plaintiff testified that he was in a car accident in 1994 and suffered injury at the C6 and C7 vertebrae resulting in pain in the neck and left arm and a closed head injury which caused memory loss and confusion.  (TR 950-52).  He underwent pain management treatment.  (TR 950).  He described that the left should now hurts when he is driving and it causes numbness in his arm.  (TR 950).  Plaintiff reported a chain saw injury from 1997 or 1998 which caused damage to his left knee. (TR 954).  Plaintiff also reported that he had approximately one dozen surgeries for kidney stones. (TR 954).

Plaintiff alleged that he can sit from ten to twenty minutes without changing positions, stand for fifteen minutes to a half-hour and walk from one half to one block; if he walks farther than that he has problems with his lower back and right leg.  (TR 900).  Plaintiff testified that he can lift a gallon of milk and is able to pick a piece of paper off the table.  (TR 900).  Plaintiff is able to read. He has a driver's license and drives.  (TR 901-02).  Plaintiff seldom goes grocery shopping, does not engage in household chores, and testified that he sometimes needs help putting on his shoes. (TR 911).  If Plaintiff is home by himself, he can prepare a sandwich or other food.  (TR 912).

Plaintiff testified that if he moves the right way he feels as if someone shot him in the back and he needs injections in his back to "calm everything down," and is bed ridden for days.  (TR

902).  At the June 2006 hearing Plaintiff testified that he has never used marijuana and alcohol has "never been a factor."  (TR 903).  At the October 2006 hearing Plaintiff testified that he had not used marijuana in 15 years.  (TR 952).  He testified that he went through rehabilitation for a substance abuse problem with cocaine in the early 1990's but he has not used it since then.  (TR 904).  At the June 2006 hearing Plaintiff testified that he was taking Effexor, Zanaflex and OxyContin.  (TR 908).  Plaintiff takes OxyContin, 80 mg three times per day for his back and lower right leg pain.  (TR 945).  Plaintiff testified that he did not have side effects on these medications as he had on others which had made him sick to his stomach.  (TR 908).  He reported that the OxyContin made him slow and tired and he lies down for one to four hours after he takes it.  (TR 908, 945).

B.    **Medical and Record Evidence**

In reviewing the ALJ's decision, the Court must scrutinize the record in its entirety.  *See Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).  The Court has reviewed the record in full. In light of the extensive record before the Court, the Court will provide the background of Plaintiff's medical evidence and discuss it in more detail below, with respect to each issue raised by Plaintiff.

Plaintiff underwent a right L4-L5 microlumbar decompression in September 1988.  (TR 369).  Plaintiff reinjured his back on January 16, 2003.  (TR 122).  Judy Macy, M.D., ordered an MRI which was performed on January 28, 2003 and showed "no evidence of recurrent herniation of disc material at L4-L5" and the postoperative appearance was "satisfactory."  (TR 123).  A.L. La Valley, M.D., noted no identification of herniation of disc material at L5-S1.  (TR 123).  Dr. La Valley noted a "tiny contour deformity at L3-L4 which may represent a tiny central herniation of disc material."  (TR 123).  The doctor noted that "previous studies are not available for comparison, and that she did "not identify high intensity zone to suggest annular tear at this tiny contour abnormality."  (TR 123).  Edmund P. Lawrence, Jr., M.D., expressly disagreed with Dr. La Valley's

4

findings and noted that L3-L4 look normal, however, the L4-L5 level appeared to "show a lumbar disc herniation and evidence of microinstability." (TR 208). February 19, 2003 MRIs of the lumbar spine and thoracic spine were unremarkable. (TR 200). An October 30, 2003 MRI of the lumbar spine showed a new central disc bulge at L3-L/4 "with moderate ventral effacement of the thecal sac." (TR 171).

On October 6, 2003 Plaintiff was admitted to the hospital for abdominal pain. (TR 157). He was diagnosed with irritable bowel syndrome, gastroesophageal reflux disease with hiatus hernia, a history of colon polyps and a right renal stone. (TR 157). On October 7, 2003 Plaintiff underwent a cystourethroscopy, urethral dilatation and removal of right double-J ureteral stent in response to severe right renal colic. (TR 139, 143-49). On October 8, 2003 Plaintiff underwent a CT scan of the abdomen and pelvis and was diagnosed with diffuse fatty liver, "scarring or subsegmental atelectasis in the right lower lung field and infiltrates or subsegmental atelectasis in the left lower lung field. (TR 141). Plaintiff has a history of treatment for kidney stones. (TR 139-49, 168, 178-87, ). Plaintiff reported to the emergency room on October 26, 2003 for right flank pain. (TR 188). Another stent was inserted on October 28, 2003. (TR 178-87). October 29, 2003 x-rays of the chest revealed suspected right basilar atelectis or infiltrate. (TR 188). On March 1, 2004 a CT scan revealed a "nonobstructing left renal calculus" and no hydronephrosis, hydroureter or ureteral calculi. (TR 645). Plaintiff was again diagnosed with tiny left renal calculi on May 10, 2005. (TR 658).

The record shows that Plaintiff was admitted to the emergency room on several occasions for low back pain including in November 2003. (TR 195-99). On March 26, 2004 Plaintiff reported severe low back pain radiating down his legs and one incidence of stool incontinence. (TR 661-

674). An MRI revealed moderate spondylosis at L4-L5 and evidence of the previous L4-L5 surgery with laminectomy defect, "focal central disc herniation L3-L4 central and eccentric to the right" and a conus "normal in appearance." (TR 671). On June 18, 2004, independent medical consultant Shang Y. Rhee, M.D., examined Plaintiff and diagnosed Plaintiff with "[c]hronic low back pain on the basis of lumbar sprain and known L4-L5 disk disease (ICD 846.0 and 722.10)." (TR 706-07).

The testimony and references in the record show that another spinal surgery was considered as early as 2004. Edmund P. Lawrence, Jr., M.D., noted on May 6, 2004 that despite Plaintiff's discomfort, it was "difficult" for Dr. Lawrence to recommend a lumbar fusion operation because the "changes are degenerative and not particularly intense. (TR 380). The record also shows that between 1990 and 1994 Plaintiff was diagnosed with right S1 radiculopathy, left cervical radiculopathy, lumbosacral radiculopathy, and Plaintiff reported headaches. (TR 381, 402-03, 408).

In April 1994 Plaintiff underwent a neuropsychological evaluation with Patricia A. Tracey, M.S., T.L.L.P., and Thomas S. Rosenbaum, Ph.D. (TR 695-705). Dr. Rosenbaum diagnosed Plaintiff with "Organic Mental Disorder, not otherwise specified, mild, secondary to 1993 motor vehicle accident and associated traumatic brain injury" (294.80), Cocaine Abuse, in remission (305.60), and Depressive Disorder, not otherwise specified (311.00). (TR 705). On September 9, 2005 Plaintiff underwent a psychiatric evaluation with Thomas G. Sherman, M.D., who diagnosed Plaintiff with Depressive Disorder NOS and assigned a GAF of 50. (TR 809-14).

## C.   Vocational Expert Testimony

The ALJ took vocational expert (VE) testimony at both the June 2006 hearing and the October 2006 hearing from two different VEs. (TR 921, 955). At the June 2006 hearing the VE

testified that Plaintiff's past work as a service mechanic is skilled and medium exertion, as a truck driver is semi-skilled and medium exertion and as a service estimator is skilled and light exertion. (TR 916). The ALJ asked the VE to consider an individual of the same age, education and past work experience as Plaintiff, who requires simple, unskilled work limited to one, two or three step instructions, who could lift and/or carry up to ten pounds frequently and twenty pounds occasionally, could stand or walk with normal breaks for six hours in an eight hour workday, and could sit with normal breaks for six hours in an eight hour workday, could push and pull with the upper and lower extremities within the weight restrictions given, and is limited to occasional postural activities including climbing, balancing, stopping, crouching, kneeling and crawling. (TR 917). The VE testified that such an individual could not perform Plaintiff's past work. (TR 917). The individual could perform work at the light, unskilled level including hand packer (3,500 jobs in the region), inspector checker (1,800 jobs), sorter (2,000 jobs), car wash attendant (5,000 jobs) and assembler (5,000 jobs). (TR 917).

The ALJ's second hypothetical asked the VE to consider an individual with the same age, education and work experience, limited to simple, unskilled work with one, two or three step instructions, limited to lifting and/or carrying less than ten pounds frequently and up to ten pound occasionally, standing or walking with normal breaks for a total of two hour in an eight-hour workday, sitting with normal breaks for a total of six hours in an eight-hour workday, and pushing and/or pulling with upper and lower extremities within the weight limits. (TR 918). The VE testified that such an individual could not perform Plaintiff's past work, but could perform sedentary, unskilled work including information clerk (1,000 jobs in the region), batch assembler (3,000 jobs), surveillance system monitor (1,500), and plastic sorter (1,500). (TR 918).

7

For the third hypothetical question the ALJ asked the VE to consider someone with the same age, education and past work experience as Plaintiff, and unable to sustain the concentration, persistence and pace "necessary to consistently fulfill work for eight hours a day, five days a week in order to complete a 40 hour work week." (TR 918). The VE testified that there would be no competitive employment available for such an individual. (TR 918). The VE testified that his testimony was consistent with the Dictionary of Occupational Titles (DOT) and its companion publications. (TR 918). Plaintiff's counsel was given an opportunity to examine the VE.

At the October 2006 hearing a different vocational expert testified that he did not have a different opinion of the classification of the past relevant work and he found that Plaintiff's past work as a tree trimmer was semi-skilled and heavy exertion. (TR 940). Plaintiff's counsel examined this VE as well and asked hypothetical questions. (TR 953).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since January 16, 2003, met the insured status requirements through September 30, 2008 and suffered from disorders of the lumbar spine with radiculopathy status post lumbar fusion, fatty liver and depression, all severe impairments, he did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments. (TR 22). The ALJ found that Plaintiff was not entirely credible, he was unable to perform his past work and he retained the ability to perform a limited range of unskilled sedentary work. (TR 23). The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (TR 28).

## V.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.    Analysis**

*1.    Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f) (2009).  If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  *See id*. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).


Plaintiff argues that the ALJ's credibility finding was in error, the hypothetical question to the VE and the RFC did not take into account all of Plaintiff's severe impairments, and the weight given to the treating physician's opinion was error.  (Docket no. 12).  Plaintiff also argues that the ALJ erred in failing to conclude that Plaintiff's moderate limitation in ability to concentrate mandated a finding of disability and that Plaintiff's due process rights were violated where the ALJ gave hypothetical questions to the VE prior to the completion of Plaintiff's testimony.  (Docket no. 12).  Plaintiff asks the Court to reverse the ALJ's decision and remand the claim for calculation and

10

payment of SSI benefits, or, in the alternative, remand the claim for further testimony from Plaintiff

and further assessment and evaluation of the evidence.  (Docket no. 12).

**2.     *Whether Substantial Evidence Supports the ALJ's Credibility Determination***

Plaintiff argues that the ALJ failed to follow SSR 96-7p when she found that Plaintiff's

"statements concerning the intensity, persistence and limiting effect of these symptoms are not

entirely credible."  (TR 26).   "[A]n ALJ's findings based on the credibility of the applicant are to

be accorded great weight and deference, particularly since an ALJ is charged with the duty of

observing a witness's demeanor and credibility."  *Walters,* 127 F.3d at 531.  Credibility assessments

are not insulated from judicial review.   Despite deference due, such a determination must

nevertheless be supported by substantial evidence.  *Id.; see also* SSR 96-7p; 20 C.F.R. §

404.1529(c).   Plaintiff argues that he received treatment for kidney stones, including the insertion

and removal of a stent on October 9, 2003, which at times causes extreme pain.  (TR 129-40). The

ALJ pointed out that there is no evidence in the record that the kidney stones cause more than

minimal deficits.  Plaintiff has not shown evidence that the kidney stones result in the need for

limitations greater than those of the ALJ's RFC.

He also argues that he severed three fingers on his right hand and, Plaintiff argues, "[s]uch

an injury, at least at times, could significantly impact fine manipulation."  The ALJ pointed out the

inconsistencies between Plaintiff's testimony at the June 2006 hearing, where he stated that he could

lift a gallon of milk and pick up a piece of paper from the table, and the October 2006 hearing where

Plaintiff testified that he cannot grasp and he drops things. (TR 900, 943-45).  The ALJ must

consider the consistency of the claimant's own statements.  *See* SSR 96-7p at *5.  The ALJ also

noted the historic aspect of the thumb injury indicating that Plaintiff had gone back to work after

recovering from the injury and the lack of evidence in the record to support limitations relating to

Plaintiff's past hand injuries.  (TR 26).

Finally, Plaintiff argues that he has "persistently sought measures that would relieve pain." (Docket no. 12 at 22 of 27).  The ALJ found that the objective evidence in the record does not support the severity of Plaintiff's pain allegations.  The ALJ pointed to several examining medical consultants who opined that, while Plaintiff may not be able to return to his past work, he could engage in other or sedentary work.  (TR 27).  The ALJ also cited the MRI results and Dr. Kalfas's opinion that he did not see "evidence of focal nerve root compression or spinal instability that would warrant further spinal surgery."  (TR 26-27, 729-30).  Dr. Lawrence also noted that the studies, including an MRI, were not reflective of Plaintiff's symptomotology and the doctor did not want to proceed with spinal surgery.  (TR 206).

To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."   20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ has not explained how he discounted Plaintiff's complaints of debilitating pain.

12

Plaintiff testified at the June 28, 2006 hearing that if he moves just "the right way" if feels like someone shot him in the back and he has to get injections in his back to "help calm everything down" and he is bedridden for days.  (TR 902).  A review of the record shows evidence that pain treatments were less than completely effective.   Duane B. Gainsburg, M.D., an independent evaluating physician, noted in a February 7, 2004 report that following Plaintiff's January 16, 2003 back injury, Plaintiff was still in physical therapy, had a "variety of epidural block and other pain injections," and that "[a]ll of this has not significantly helped and, indeed, symptoms are progressive; he now requires Vicodin ES at two per day plus Ultram at less than two per day average." (TR 639).          The ALJ noted Dr. Weiss's August 29, 2005 report that Plaintiff's two epidural steroid injections provided a "modicum of relief."  (TR 25, 496).  In the same report, Dr. Weiss noted Plaintiff's report that he "continues to use medications without improvement."  (TR 496).  On September 14, 2005 Dr. Weiss diagnosed Plaintiff with abstinence syndrome, opioid dependancy and postlaminectomy syndrome.  (TR 498).   On December 5, 2005 Dr. Weiss noted that Plaintiff has "several myofascial trigger points in the lower lumbar region," with "myofascial pain as evidenced by tender palpable myofascial trigger points on palpation." (TR 506).  Plaintiff's reports of pain and the physician's reports of the effectiveness of pain management and medication are not addressed in the ALJ's decision.  Similarly, the ALJ did not address Plaintiff's need to lie down, either to manage pain or as a result of the alleged side-effects of his pain medication.  (TR 945).  The VE had testified that an individual's need to lie down three times per day for one to four hours would preclude employment.  (TR 960).

     The ALJ also stated in his credibility finding that Plaintiff "is able to perform a substantial range of activities of daily living as well as help care for this 6 year old son."  (TR 26).  The ALJ did not provide a citation to the record to support this assertion and it is simply unsupported by the

13

record.  The record contains no written report of Plaintiff's daily activities and Plaintiff's testimony at the June 2006 and October 2006 hearings was that he was performed no shopping or household chores, has no activities or hobbies, and is usually not home alone with his younger child.  Plaintiff agreed that he watches cartoons with the child but that the child "plays by himself" and Plaintiff is not able to lift him.  (TR 905).  The record shows no evidence that Plaintiff helps "care" for his six year old son.  (TR 905).  The ALJ's credibility determination with respect to the limited issue of the severity of Plaintiff's pain allegations is not supported by substantial evidence.

Plaintiff also argues that the ALJ erred in pointing out that Plaintiff was not currently under any treatment for depression other than taking Effexor and that "Dr. Sherman indicated that the claimant would benefit greatly from aggressive psychiatric management including psycho-therapy and psychiatric medications."  (Docket no. 12 at 24 of 17, TR 27).  Plaintiff argues that the ALJ "failed to comply with SSR 96-7p in discrediting the claimant for his failure to obtain treatment without first considering his explanation for this lack of treatment."  (Docket no. 12).  As an initial matter, it is not clear from the ALJ's statements that he is discounting Plaintiff's credibility on this basis.  But even if the ALJ discounted the severity of Plaintiff's alleged mental impairments based on Plaintiff's credibility, the ALJ did not err in pointing out that Plaintiff was not under treatment for depression and that he was taking Effexor.  The ALJ is required to consider Plaintiff's medical history, treatment and response, . . . ."  SSR 96-7p at *3, 5; 20 C.F.R. 404.1529(c)(3).  To the extent that Plaintiff pointed out Dr. Sherman's opinion that Plaintiff would "benefit greatly" from psychiatric management, psycho-therapy and psychiatric medications, the ALJ is required to consider "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources."  SSR 96-7p at * 5.

Although it does not appear from the record that the ALJ used these two statements together

14

as a basis for discounting Plaintiff's credibility, the Court looked at this issue and finds that the ALJ

did not err.  The Social Security Ruling 96-7p provides that

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. SSR 96-7p at *7.

Dr. Sherman's Psychiatric Evaluation report is dated September 14, 2005.  (TR 809-814).

Dr. Sherman diagnosed Plaintiff with Depressive Disorder NOS and a GAF of 50.  (TR 813).  Dr.

Sherman concluded that Plaintiff "has not reached maximum medical improvement."  (TR 814).

Dr. Sherman noted that "[o]utside of a brief course of treatment with Dr. Valko, it appears as though

[Plaintiff] has never been tried on an adequate course of antidepressants."  (TR 814).  Dr. Sherman

recommended that Plaintiff "receive aggressive psychiatric management, including psychotherapy

and psychiatric medications."  (TR 814).  Plaintiff is correct that he testified that he lacked health

insurance.  (TR 899).  Plaintiff testified, however, that the lack of health insurance occurred as of

March 2006.  (TR 899).  Dr. Sherman's report and the accompanying recommendations were made

six months prior to the expiration of Plaintiff's health insurance.  The Court does not find that it was

error for the ALJ to reference either the fact that Plaintiff was not currently under treatment for

depression or Dr. Sherman's recommendation for treatment.

Based upon the foregoing, the Court concludes that substantial evidence does not support

the ALJ's credibility assessment with respect to Plaintiff's allegations of the severity of the pain he

suffers.  Therefore, the case should be remanded so that the ALJ may assess Plaintiff's credibility,

specifically citing to the facts (and exhibits) that support his or her determination including which

of Plaintiff's allegations related to pain are or are not credited and the evidentiary basis for his or her conclusions. Thereafter, the ALJ should: (1) specifically state whether Plaintiff's credible complaints affect his or her RFC finding and the reasons for those decisions; and (2) conduct a new step four analysis if otherwise appropriate and proceed to a step five analysis if necessary.

**3.      *Whether The ALJ Gave Appropriate Weight To Treating Medical Physician Dr. Macy's Opinion***

Plaintiff argues that the ALJ failed to give appropriate weight to treating physician Dr. Macy's report of July 2, 2003 that Plaintiff was totally disabled from January 16, 2003 to "unknown" and had postural limitations; her March 9, 2006 report that "[a]t this time" Plaintiff is unable to work, will most likely be unable to work for at least one year, needs to lie down periodically throughout the day and is unable to bend or twist at the waist; and her report of April 10, 2006 that

Plaintiff lies down two to three times per day and can only sit for 15 to 20 minutes and stand for 20 minutes(TR 226-28, 511).

Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Commissioner of Social Security*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); see also 20 C.F.R. § 404.1527(e). The ALJ did not err in failing to adopt Dr. Macy's conclusion that Plaintiff is disabled. The ALJ's findings with respect to the weight given to the treating physician's opinions are supported by the record.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded

16

substantial deference.  Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.

If an ALJ rejects a treating physician's opinion, he must "give good reasons" for doing so in his written opinion.  *See* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p and 96-2p. Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion.  *Wilson v. Comm'r of Social Sec'ty*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

The ALJ found that Plaintiff has the RFC to perform "simple, unskilled work with one, two, or three step instructions; lift and/or carry less than 10 pounds frequently, and 10 pounds occasionally . . . ; stand and/or walk (with normal breaks) for a total of 2 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an eight-hour workday; and perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions." (TR 23).  The exertional findings of the ALJ are for a limited range of sedentary work. Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

17

The ALJ fully discussed her reasons for giving reduced weight to Dr. Macy's opinions.
First, the ALJ pointed out that a number of independent examining physicians and the State agency
medical consultant concluded that Plaintiff would be able to perform work at the sedentary level of
exertion. The examining physicians agreed that Plaintiff was unable to perform his past work, which
the VEs had agreed was light and medium in exertion. They did not, however, preclude all work.
Dr. Gainsburg concluded that Plaintiff "is unable to return to his former position of employment
and any back-intensive activities should be avoided, for both of his allowed conditions, lumbosacral
sprain and L4-5 disc herniation." (TR 640).

Plaintiff underwent an independent medical examination with Shang Y. Rhee, M.D. on June
18, 2004. Dr. Rhee concluded that Plaintiff is "incapable of doing his job as a truck driver," he does
"not expect his physical condition will change a significant decree from here on," and stated that
"[a]s far as his functional limitations are concerned, I believe that he is at the level of sedentary work
classification." (TR 707). Dr. Rhee noted on examination that Plaintiff's cervical range of motion
was functional, upper extremity strength and sensory motor exam were "essentially unremarkable
with 5/5 strength," and lumbar movement is "markedly limited with pain," and "cerebellar function
is slow but fair." (TR 707).

Dr. Macy noted Plaintiff's report on May 12, 2005 that Plaintiff "is thinking that he needs
some line of work that does not involve a lot of repetitive bending and lifting." (TR 493). To the
extent that Dr. Macy's March 9, 2006 report states that "[a]t this time Plaintiff is unable to work and
most likely will be unable to work for the next at least one year," the ALJ points out that it is unclear
whether this opinion refers to Plaintiff's past work, at the light and medium exertional level, or any
work, including sedentary work. (TR 27, 510). The ALJ also pointed out that much of Dr. Macy's
opinion was based on Plaintiff's subjective complaints. (TR 27). Substantial evidence in the record

18

supports this conclusion.  For example on April 10, 2006, Plaintiff reported that his back gives out on him and he lies down to get relief.  He also reports that he is only able to sit for 15 to 20 minutes and stand for 20 minutes.  (TR 511).  The ALJ's decision with regard to the weight given to Dr. Macy's opinions that Plaintiff's is disabled and cannot work is explained and supported by substantial evidence in the record.

**4.**      ***Whether The ALJ's RFC Is Supported By Substantial Evidence, Whether She Presented An Accurate Hypothetical Question To The VE and Whether She Erred In Failing to Find Plaintiff Disabled As A Result Of Moderate Limitations In Concentration, Persistence or Pace***

Plaintiff argues that the ALJ's RFC and hypothetical question to the VE did not adequately address Plaintiff's mental limitations. The ALJ evaluated Plaintiff's mental impairments pursuant to 20 C.F.R. § 404.1520a and concluded that Plaintiff has mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.  (TR 27).  Neither party challenges these findings.

The ALJ in his RFC limited Plaintiff to performing "simple, unskilled work with one, two or three step instructions."  (TR 23).  Plaintiff relies on this Court's ruling *Alhin v. Commissioner of Social Security* to support his argument that the ALJ's RFC does not adequately address his mental limitations.  *Alhin v. Comm'r of Soc. Sec.*, 2008 WL 2743954 (E.D. Mich. July 11, 2008). *Alhin* is distinguishable because the ALJ in *Alhin* made a specific finding of fact that Plaintiff's deficiencies in sustaining focused attention and concentration result in incomplete tasks and the ALJ only included a limitation to "simple, routine and repetitive tasks."  Unlike *Alhin,* the ALJ did not make a finding of fact that Plaintiff's difficulties or limitations would result in incomplete tasks or

19

another specific work-related function not addressed by the limitations set forth in the ALJ's RFC. Conspicuously absent from Plaintiff's three page argument that the RFC and hypothetical question are "fatally defective" is a reference to *any specific* work-related mental limitation or evidence of the same which the ALJ failed to consider, failed to include in the RFC or requires a more restrictive limitation than that set forth in the RFC. Furthermore, the ALJ's RFC limiting Plaintiff to unskilled work of up to three step instructions provides more detail than a mere reference to "simple" work.

Plaintiff also argues that because the ALJ found that he has "moderate" difficulties with concentration, persistence or pace, he must be awarded benefits. (Docket no. 12 at 20 of 27). Plaintiff argues that the word "moderate" parallels the work "often" used in the prior regulations. *See Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D.Mich. 2005). Plaintiff then relies on *Bankston v. Commissioner of Social Security*, 127 F. Supp. 2d 820 (E.D.Mich. 2000), for the determination that "often" should be logically defined as fifty percent of the time. Plaintiff concludes that a "moderate" limitation therefore impacts Plaintiff's ability to work for fifty percent of the time and consequently precludes all work.

The regulations provide that in rating the degree of limitation in the functional areas for mental impairments, the "last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). The "moderate" degree is not the last point on the scale, which includes none, mild, moderate, marked and extreme. There is no basis for concluding that a finding of a single "moderate" degree of limitation, without more, equates to a finding of disability. Plaintiff has failed to apply any of his "if X then Y" analysis to the actual facts of his case. Plaintiff must brief the issues he presents to the Court. Any substantive consideration of this argument is encompassed in the discussion of the mental limitations contained in the RFC, set forth above.

The Court finds that in this instance, based on a review of the record transcript before the Court, the RFC limitation to simple, unskilled work with one, two, or three step instructions is supported by substantial evidence. For the reasons set forth above, however, the claim should be remanded for the limited purpose of consideration of Plaintiff's credibility related to his pain symptoms and ability to use his fingers. To the extent that the ALJ's new findings result in a different RFC, the ALJ shall conduct a new step four, and, if necessary step five determination.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). As set forth above, the ALJ's findings with respect to Plaintiff's exertional and postural limitations are supported by substantial evidence. The ALJ's credibility finding on the limited issue of Plaintiff's pain symptoms is not supported by substantial evidence. Therefore, the ALJ must conduct a new step five determination if necessary.

5.      ***Whether the ALJ Violated Plaintiff's Due Process Rights By Obtaining Testimony From The VE Prior To The Completion of Plaintiff's Testimony***

Plaintiff argues that the ALJ violated his due process rights because he gave hypothetical questions to the VE "prior to the time that counsel had the opportunity to examine claimant." (Docket no. 12). Plaintiff provided no legal support for his due process argument. Plaintiff did not brief the due process argument. Plaintiff has not alleged any manner in which he was prejudiced or otherwise harmed by the order of events at the June and October 2006 hearings.

As the record shows, this claim came before the ALJ three separate times. The first time, the hearing was adjourned to allow Plaintiff to secure representation. (TR 874-888). The day before the second hearing, in June 2006, Plaintiff's counsel presented hundreds of pages of new medical documents to the ALJ. (TR 889-930). The ALJ testified that he and his staff worked late to prepare

for the hearing, however, the hearing itself was schedule for only one half hour.  The ALJ completed her questioning of the Plaintiff and agreed to continue the hearing on another date to allow more time for Plaintiff's counsel to question Plaintiff.  The VE was present, however, so the ALJ elicited testimony from the VE regarding the exertional and skill levels of Plaintiff's past work and asked three hypothetical questions.  (TR 916-29).  Plaintiff's counsel was given an opportunity to question the VE and did so.  The hearing was continued in October 2006, as agreed and a different VE was present.  After Plaintiff's counsel completed his examination of Plaintiff, counsel was given a full opportunity to question the VE, including questions about the June 2006 testimony from the first VE.

The record shows that the ALJ gave Plaintiff and his counsel every opportunity to present their evidence in full, despite an otherwise tight docket and Plaintiff dumping hundreds of pages of new documents on the ALJ the night before the second hearing.  Plaintiff had the opportunity on October 2006 to question the VE after Plaintiff's testimony was complete.  The court finds that this issue is not properly before the Court due to Plaintiff's failure to brief it.  The Court also notes that neither Plaintiff's brief  nor a reading of the record and hearing transcripts shows any basis to find that Plaintiff's due process rights were violated.

## VI.    CONCLUSION

Defendant's Motion for Summary Judgment (docket no. 17) should be DENIED, that of Plaintiff (docket no. 12) DENIED and the instant claim remanded for further proceedings as set forth herein.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in

28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 13, 2009             s/ Mona K. Majzoub_____
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE




## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 13, 2009           s/ Lisa C. Bartlett
                                    Courtroom Deputy